IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


STEPHANIE BADON,                                    CV 05-1183-MA

                    Plaintiff,                      OPINION AND ORDER

        v.

JO ANNE B. BARNHART, Commissioner
of Social Security,


                    Defendant.

        RORY LINERUD
        PO Box 1105
        Salem, OR  97308

            Attorney for Plaintiff

        KARIN J. IMMERGUT
        United States Attorney
        NEIL J. EVANS
        Assistant United States Attorney
        1000 S.W. Third Avenue, Suite 600
        Portland, OR  97204-2902

1 - OPINION AND ORDER

NANCY A. MISHALANIE
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075

    Attorneys for Defendant

MARSH, Judge:

<u>**BACKGROUND**</u>

Plaintiff, Stephanie Badon (Badon), brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), and Supplemental Security Income (SSI) under Title XVI of the Act.  <u>See</u> 42 U.S.C. §§ 401-33, 1381-83f.  The court has jurisdiction under 42 U.S.C. § 405(g).

Badon applied for disability on April 26, 2001, alleging that she became unable to work in April, 1999, due to depression and right ankle problems.  The day before lodging the application at issue in this case, the Commissioner's decision denying an earlier application for disability became final.  Accordingly, the earliest possible date Badon could be adjudged disabled is January 25, 2001.

After her application was denied initially, and on reconsideration, a hearing was held on December 11, 2002. However, the Administrative Law Judge (ALJ) recessed the hearing for an investigation into whether Badon was malingering when it

became clear that Badon was alleging mental retardation, which he found to be inconsistent with her demonstrated abilities, and with her allegations in prior disability applications.  A supplemental hearing was held on May 28, 2003, at which a medical expert provided testimony.  On September 19, 2003, the ALJ issued a decision denying benefits.

On March 26, 2004, the Appeals Council vacated this decision and remanded Badon's case for further proceedings.  Thus, a third hearing was held on October 13, 2004, at which a second medical expert testified.  On November 10, 2004, the ALJ again issued a decision denying benefits.  The Appeals Council denied Badon's request for review, making the ALJ's decision the Social Security Administration's final decision.

On appeal to this court, Badon alleges the ALJ erred by: (1) failing to properly assess her residual functional capacity; and (2) failing to pose a complete hypothetical question to the vocational expert at step five, and relying on erroneous vocational expert testimony.

For the reasons that follow the Commissioner's decision is AFFIRMED and this case is DISMISSED.

## STANDARD OF REVIEW

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995).  To meet this burden, a claimant must demonstrate an

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

Here, at step one, the ALJ found that Badon had not engaged in substantial gainful activity since January 25, 2001. See 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the ALJ found that Badon had "severe" depression and right ankle status-post fracture and surgery. See 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the ALJ found Badon's impairments did not meet or equal the requirements of a listed impairment. See 20 C.F.R. §§ 404.1520(d), 416.1520(d).

The ALJ assessed Badon with the residual functional capacity (RFC) to: lift and carry about 20 pounds occasionally and up to 10 pounds frequently; sit for a total of six hours cumulatively in an eight hour workday, with normal breaks; push and pull the same amount of weight she can lift or carry; only occasionally climb stairs and equivalent ramps with handrails; never climb ropes, ladders or scaffolding; occasionally bend, balance, stoop, kneel, crouch and crawl; occasionally interact with co-workers

5 - OPINION AND ORDER

and the general public; and perform no more than simple, routine, 1-2-3 step work.  <u>See</u> 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945; <u>see also</u> Social Security Ruling (SSR) 96-8p.

At step four, the ALJ found Badon was not able to perform her past relevant work.  <u>See</u> 20 C.F.R. §§ 404.1520(f), 416.920(f).

At step five, the ALJ determined that Badon remained capable of performing other work existing in significant numbers in the national economy, such as tray setter, folding small products assembler, and food service worker.  <u>See</u> 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

<u>**DISCUSSION**</u>

I.    <u>**Substantial Evidence Supports the ALJ's Assessment of Badon's Residual Functional Capacity.**</u>

A claimant's RFC is the most an individual can still do despite her limitations.  SSR 96-8p.  It is an "administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  <u>Id</u>.

In the instant case the ALJ found Badon had the RFC set forth above.  Badon alleges the ALJ omitted from her RFC the limitation that she should avoid exposure to hazards, assessed by

state agency evaluator, Frank Lahman, Ph.D.  According to Badon, this omission was fatal because the ALJ's failure to include it in his hypothetical question, at step five, resulted in a finding that Badon can perform jobs involving hazards.  I concur with Badon, in part.  Yet, since I find, below, that the ALJ identified a job existing in significant numbers in the national economy that did not involve exposure to hazards, any error resulting from the ALJ's failure to include a limitation from hazards in Badon's RFC assessment was harmless. Cabe v. Barnhart, 2006 WL 377242 (9th Cir. 2006)(harmless error results where the omitted information did not affect the decision to deny benefits).

**II.   Substantial Evidence Supports the ALJ's Step Five Determination That Badon Can Perform Other Work.**

At step five of the sequential evaluation the Commissioner must show that the claimant can do other work which exists in the national economy.  Andrews v. Shalala, 53 F.3d at 1043.  The Commissioner can satisfy this burden either by applying the guidelines at 20 C.F.R. § 404, Subpt. P, App. 2, or by eliciting the testimony of a vocational expert (VE) with a hypothetical question that sets forth all the limitations of the claimant. Id.  If a claimant has functional limitations or work restrictions which prevent her from performing the full range of work at a given exertional level, the guidelines cannot be used at step five to determine whether she is disabled.  Instead, the

ALJ must elicit testimony from a VE to determine whether jobs
exist in the national economy that the claimant can perform
despite her limitations and restrictions.  Tacket v. Apfel, 180
F.3d 1094, 1103-04 (9th Cir. 1999).

The VE relies primarily on the Department of Labor
publication Dictionary of Occupational Titles (DOT) including its
companion publication, Selected Characteristics of Occupations,
for information about the requirements of work.  20 C.F.R. Part
404, Subpart P, Appendix 2 § 200.00(b); see also SSR 00-4p.
These references classify occupations by exertional level, as
defined in 20 C.F.R. §§ 404.1567, 416.967, and by skill level, as
defined in 20 C.F.R. §§ 404.1568, 416.968.

Here, since Badon's RFC did not allow for a full-range of
work at any given exertional level, the ALJ elicited the expert
opinion of a VE.  He asked the VE to consider:

> a 31-year-old individual with eleven years of education, who
> has performed the past relevant jobs as Ms. Badon has
> performed, who can occasionally lift 20 pounds, can
> frequently lift 10 pounds.  Can stand and walk, with normal
> breaks, at least two hours of an eight-hour day.  Can sit up
> to six hours in an eight-hour day.  Push and pull is limited
> to be within the weight limits I previously gave you.  Can
> occasionally climb ramps and stairs, but never ladders,
> ropes, or scaffolds.  And that person would also have non-
> exertional limitations, as found on the mental residual
> functional capacity assessment form, in the following areas.
> Number 3, and they're all moderate.  Number 5 is moderate.
> Numbers 12 is [sic] moderate, and number 20 is moderate.[1]

---

[1] Number 3 on the mental residual functional capacity form is
"The ability to understand and remember detailed instructions."
Number 5 is "The ability to carry out detailed instructions."

And do you have one of those forms that you checked off,
where you can read the definitions of those?

The VE answered in the affirmative.  She then testified that this
hypothetical worker would be able to perform the jobs of tray
setter, small products assembler, and food wrapper, all existing
in significant numbers in the national economy.

Badon argues the ALJ's hypothetical was incomplete because
he omitted the following limitations, which he earlier included
in the RFC assessment: (1) difficulty maintaining concentration,
persistence, and pace; (2) difficulty working in coordination
with, or in proximity to others without being distracted; and (3)
getting along with coworkers or peers without distracting them or
exhibiting behavioral extremes.  According to Badon, these
omissions were fatal because the jobs the VE identified involve
all three of these abilities.

I do not find in the ALJ's RFC assessment any limitation on
Badon's ability to maintain concentration, persistence or pace.
However, I agree with Badon that the ALJ omitted the moderate
limitations he assessed in her ability to work in coordination
with others without being distracted, and in her ability to get
along with coworkers or peers without distracting them or
exhibiting behavioral extremes.  Nevertheless, I find these

---

Number 12 is "The ability to interact appropriately with the
general public."  Number 20 is "The ability to set realistic
goals or make plans independently of others."

omissions did not result in error as the jobs identified by the
VE did not require these abilities.

Without addressing her contentions regarding her alleged
inability to maintain concentration, persistence or pace, I will
discuss Badon's claims of error as to each job identified by the
VE.

Badon argues that based on the DOT code identified by the
VE, the tray setter job requires direct contact with coworkers
and supervisors and more public contact than her RFC allows.  The
VE testified that the tray setter job was classified under DOT
code 311.472-010.  This code corresponds with the title "Fast-
Food Worker," and the description includes all aspects of working
in a fast-food restaurant, such as taking customer orders,
receiving payment, preparing drink orders, and making french
fries.  The VE testified that tray setters work "in an assigned
area" and that they can "sit or stand."  Based on this testimony,
the portion of the DOT description that appears to correspond to
tray setter reads, "Selects requested food items from serving or
storage areas and assembles items on serving tray or in takeout
bag."

While there can be no doubt that many of the jobs at a fast-
food restaurant involve direct contact with the public and with
coworkers and supervisors, it is not clear from the DOT code or
the VE's testimony that the job of tray setter falls into this

category.  Since the VE's testimony, though sparse, does not
conflict with the DOT description for this job, and since the DOT
description does not necessarily contemplate that a tray setter
will have direct contact with the public or more than occasional
contact with coworkers or supervisors, I find no merit to Badon's
contention that her omitted limitations preclude her from
performing this job.

Next, Badon argues the small product assembler job, as cited
by the VE, requires working as part of a team in an assembly
group, and using handtools and powertools, which she says
conflicts with her limitation from hazards that the ALJ failed to
include in her RFC assessment.

The VE did not provide a DOT code for the job of small
products assembler.  Badon identified one description for this
job in the DOT, titled "Assembler, Small Products I," which does
contemplate work in an assembly group.  The Commissioner contends
the VE was referring to the other description in the DOT for
"Assembler, Small Products II," because this description does not
involve work as part of an assembly group.  I find this inference
reasonable.  However, even the second small products assembler
description, listed at DOT 739.687-030, contemplates the use of
handtools, power tools, and bench machines, which are probably
prohibited by Badon's omitted need to avoid hazards.
Accordingly, I find substantial evidence does not support the

ALJ's adoption of the VE's finding that Badon can perform this job.

Finally, Badon argues the food wrapper position also involves working with a team, and may involve the use of machinery.  Unfortunately, the VE did not cite the DOT code for this position.  However, she testified that a food wrapper wraps up foods such as sandwiches and pastries, and is allowed to sit or stand at a counter or table.  In light of the fact Badon's attorney did not pose any questions to the VE, nor request clarification on the DOT codes, I am not persuaded that Badon's omitted limitations preclude her from performing the job of food wrapper.  Nevertheless, the absence of clear evidence that they do not precludes me from finding that the omission was harmless.  Accordingly, I find substantial evidence does not support the ALJ's finding that Badon can perform this job.

In sum, I find substantial evidence to support only the ALJ's determination that Badon can perform the job of tray setter.  Social Security Ruling 83-10 states, "Whether work exists in the national economy for any particular individual depends on whether there is a significant number of jobs [sic] (in one or more occupations) with requirements that the individual is able to meet...".  Thus, the ALJ can meet his burden at step five even by identifying just one job the claimant

remains capable of performing, so long as that job raises to the level of "a significant number of jobs."

The VE testified that there are 1900 tray setter jobs regionally and 204,000 nationally. Since the Ninth Circuit has found that similar numbers of jobs constituted a "significant number" at step five, I find the ALJ met his burden of showing Badon was not disabled. See Barker v. Sec. of Health and Human Services, 882 F.2d 1479 (9th Cir. 1989)(finding 1900 jobs in claimant's "geographical area" was a significant number); cf. Thomas v. Barnhart, 278 F.3d 947 (9th Cir. 2002)(finding 1300 jobs locally and 622,000 nationally constituted a significant number).

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this _9_ day of May, 2006.

                              /s/  Malcolm F. Marsh
                         Malcolm F. Marsh
                         United States District Court Judge